1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3 RATONES CIEGOS, a California Limited Liability Company | Case No. 14cv1518 BTM (BLM) |
| Plaintiff, | **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| SANTOS LUCHA LIBRE TACO SHOP LLC, an Arizona Limited Liability Company, MARTINA GUZMAN, an Individual, and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiff 3 Ratones Ciegos LLC has filed a Motion for Default Judgment against Santos Lucha Libre Taco Shop LLC and its owner or principal, Martina Guzman (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons discussed below, Plaintiff's motion is **GRANTED**.

## I. **FACTUAL BACKGROUND**

Plaintiff owns the Lucha Libre Gourmet Taco Shop (the "Restaurant"), which operates in two locations in San Diego, California. Plaintiff's Complaint ("Compl.") ¶ 4. Plaintiff describes the Restaurant as offering "a vibrant and

1   distinctive dining experience featuring very bright colors in a French Rococo
2   style infused with Mexican wrestling-themed decor and epicurean cuisine, a
3   combination of which is not typically associated with a taco shop." Plaintiff's
4   Complaint ("Compl.") ¶ 11. Plaintiff asserts having expended large sums on
5   advertising, promoting and marketing to cultivate its distinctive theme and
6   dining concept, and claims to have acquired national attention for its unique
7   decor and food by being featured in magazines, televisions shows and social
8   media. Id. at ¶¶ 14-19.

9       Plaintiff claims to own a number of common law trademarks associated
10   with the Restaurant, including "LUCHA LIBRE GOURMET TACO SHOP,
11   LUCHA LIBRE TACO SHOP, and LUCHA LIBRE," and claims to have used
12   these marks exclusively and continuously since January of 2007. Id. at ¶ 20.
13   In March 2014, Plaintiff filed three pending applications to register these
14   trademarks with the United States Patent and Trademark Office. Id. at ¶¶ 23-
15   25.

16       Plaintiff claims that Defendants' restaurant began operating in Phoenix
17   sometime after Plaintiff opened the Restaurant and began using its common
18   law trademarks on or about January 15, 2008, and that Defendants use a very
19   similar name ("Santos Lucha Libre Taco Shop") and employ the  same
20   distinctive decor, Mexican-wresting theme and Mexican style food, as the
21   Restaurant. Id. at ¶¶ 15, 26-29. Plaintiff describes three specific instances of
22   reported customer confusion between the Restaurant and Defendants' Santos
23   Lucha Libre Taco Shop. Id. at ¶ 31. First, in March of 2014, diners were
24   overheard discussing Plaintiff's new location in Phoenix; second, also in March
25   of 2014, a diner congratulated Plaintiff's employee on the "new location," and;
26   third, a Facebook® user left a comment on the Restaurant's page stating that
27   a new Phoenix restaurant uses the same name and color scheme, and asked
28   whether it was affiliated with the Restaurant. Id.

Plaintiff sent a cease and desist letter to Defendants via U.S. mail on April 16, 2014 prior to initiating this suit to advise Defendants of their potential infringement on Plaintiff's trademarks.   Plaintiff claims that Defendants' representative made contact by telephone on April 21, 2014, but Plaintiff was unable to convince Defendants to agree to change their restaurant's name or decor.  Id. at ¶¶ 32-33.

## II.  PROCEDURAL BACKGROUND

On June 23, 2014, Plaintiff initiated this action for: (1) Federal Unfair Competition (Trademark), 15 U.S.C. § 1125(a), section 43(a) of the Lanham Act; (2) Federal Unfair Competition (Trade Dress), 15 U.S.C. § 1125(a); (3) Common Law Unfair Competition; (4) Common Law Trademark Infringement; (5) Common Law Trade Dress Infringement, and; (6) State Trademark Infringement and Unfair Competition pursuant to California Business & Professions Code § 17200, et seq.  Compl.  ¶¶ 34-89.  Defendants were each personally served with Plaintiff's complaint on June 24, 2014. (Dkt. Nos. 5, 6).

On August 13, 2014, Default was entered against Defendants.

On September 12, 2014, Plaintiff filed this Motion for Default Judgment against Defendants.

## III.  JURISDICTION

Plaintiff alleges that Defendant Santos Lucha Libre Taco Shop LLC is an Arizona limited liability company having its principal place of business in Phoenix, Arizona, and that Defendant Martina Guzman is a citizen of Arizona residing in Phoenix.  Compl. ¶¶ 3-4.  Plaintiff asserts that the Court has personal jurisdiction over Defendants because they "have purposely availed themselves" of California laws by actively marketing and promoting their restaurant using an infringing trademark and trade dress in California via the

1   Internet, on the Facebook® and Instagram® websites.  Compl. ¶ 9.  Plaintiff

2   argues that having access to these websites in this judicial district caused local

3   consumers to visit Defendants' restaurant and confuse it with Plaintiff's.  The

4   Court relies on the pleadings to find that Defendants' minimum contacts with

5   California are sufficient to provide this Court with specific jurisdiction over

6   Plaintiff's claims against them, arising out of those contacts.  See Mavrix Photo,

7   Inc. v. Brand Technologies, Inc., 647 F.3d 1218 (9th Cir. 2011) (finding specific

8   jurisdiction over an out-of-state defendant who allegedly posted plaintiff's

9   copyrighted photos on its website, because the  infringement was expressly

10  aimed at California under the purposeful direction analysis, and caused

11  defendant harm that defendant knew was likely to be suffered in California);

12  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9th Cir. 2000).

13

14                          **IV.  STANDARD**

15          Entry of default judgment is governed by Federal Rule of Civil Procedure

16  55(b) and is left to the trial court's sound discretion.  Aldabe v. Aldabe, 616

17  F.2d 1089, 1092 (9th Cir. 1980).  After default has been entered, the well-

18  pleaded factual allegations of the complaint, except those relating to the

19  amount of damages, shall be taken as true.  Geddes v. United Fin. Group, 559

20  F.2d 557, 560 (9th Cir. 1977).  In determining damages, the court can rely on

21  evidence submitted by the plaintiff or may conduct a full evidentiary hearing.

22  Fed. R. Civ. P. 55(b)(2).  A judgment by default shall not award damages that

23  are different from or exceed the amount requested in the plaintiff's complaint.

24  Fed. R. Civ. P. 54(c).

25          Factors which may be considered by courts in exercising their discretion

26  as to whether to enter default judgment include: (1) the possibility of prejudice

27  to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of

28  the complaint; (4) the sum of money at stake in the action; (5) the possibility of

a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

## V.  DISCUSSION

Plaintiff seeks default judgment against both Defendants.  As discussed below, the Court finds that default judgment is warranted.

### A.  Eitel Factors

The Eitel factors weigh in favor of granting default judgment.  Defendants were properly served but have failed to respond to the complaint and Plaintiff appears to have no other recourse but this Court's relief.  There is no evidence that the default was due to excusable neglect since Plaintiff has stated facts showing the Defendants are aware of this lawsuit and properly served both Defendants.  Furthermore, Plaintiff has a meritorious claim against Defendants and will be left without an adequate remedy if default judgment is not entered. Therefore, default judgment is appropriate.

### B.  Merits of Claims

Plaintiff seeks default judgment on its claims for unfair competition (trademark and trade dress infringement) under the Lanham Act, common law unfair competition, common law trademark and trade dress infringement, and California trademark infringement and unfair competition under Cal. Bus. & Prof. Code § 17200, as well as injunctive relief and attorneys' fees and costs in the amount of $14,465.00.

Plaintiff has pleaded sufficient facts to establish that Defendants' actions have infringed on Plaintiff's trademarks and trade dress in violation of its rights

under the Lanham Act and federal, common law and state trademark and unfair competition laws.

Section 43(a)(1) of the Lanham Act states:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 43(a) protects against infringement of unregistered marks and trade dress as well as registered marks, see, e.g., Brookfield Communications, Inc. v. West Coast Entertainment Corp.,174 F.3d 1036, 1046 n.6 (9th Cir. 1999), and protects against a wider range of practices such as false advertising and product disparagement. See 15 U.S.C. § 1125(a)(1)(B); Two Pesos, Inc. v. Taco Cabana, 505 U.S. 763, 768 (1992).  To state an infringement claim under § 43(a), a plaintiff must show that its marks are distinctive, nonfunctional, and similar enough to the defendant's to deceive or confuse the public.  See Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1046 (9th Cir. 1998).  While "distinctiveness" comes from § 2 of the Lanham Act, setting forth requirements for trademark registration, which is not itself a prerequisite for protection under section 43(a), courts have used the test for registration qualification as a guiding principle for determining whether an unregistered mark is entitled to Lanham Act protection.  See Two Pesos, 505 U.S. at 768.  An identifying mark is distinctive and capable of being protected if it is either "inherently distinctive or has acquired distinctiveness through secondary meaning."  Id. at 769.  (internal citations omitted).  Additionally,

1  functionality of a design exists and abrogates trademark protection when it is

2  one of only a limited number of equally efficient options, protection of which

3  would unduly hinder competition.  See id. at 775. (adopting the nonfunctionality

4  test articulated in Sicilia Di R. Biebow & Co. v. Cox, 732 F.2d 417, 426 (5th Cir.

5  1984)).

6          In Two Pesos, the Supreme Court affirmed the appeals and trial courts'

7  findings that a Texas-based Mexican restaurant's trade dress was both

8  distinctive and nonfunctional, thus warranting section 43(a) protection. Id. at

9  770.  The restaurant described its Mexican-themed trade dress as "a festive

10  eating atmosphere having interior dining and patio areas decorated with

11  artifacts, bright colors, paintings and murals. . . [and the] exterior of the building

12  is a festive and vivid color scheme using top border paint and neon stripes."

13  Id. at 765.  Being similar on the facts to Two Pesos, the Restaurant's trade

14  dress in this case is found to be distinctive on the same grounds.  Specifically,

15  Plaintiff's complaint describes the Restaurant as having a particularly distinctive

16  atmosphere and decor featuring, inter alia, a hot pink, black and light blue with

17  gold accents color scheme on walls and exterior, Mexican wrestling-themed

18  decorations, photos, masks, a "Champions Booth," black tuck upholstery,

19  French Rococo style gold frames, and other elements untraditional to

20  restaurants offering Mexican cuisine and/or featuring Mexican wrestling.

21  Compl. at ¶ 20.    These aspects of Plaintiff's trade dress are clearly

22  nonfunctional because they are distinct to Plaintiff's uniquely-themed

23  Restaurant, are not part of a limited number of efficient design options, and are

24  intended to identify Plaintiff's particular brand to the public.  Seeing no good

25  reason to permit competitors like Defendants to copy these marks, destroying

26  Plaintiff's opportunity to establish the commercial value it has cultivated, the

27  Court finds that granting trademark protection to Plaintiff would not unduly limit

28  competition in the market. Thus, Plaintiff has satisfied the nonfunctionality

1 element.

2       Plaintiff has shown that a high degree of similarity exists between the
3 Restaurant's marks and those used by Defendants in their Phoenix
4 establishment, and that this similarity is likely to deceive or confuse the public.
5 See Kendall–Jackson Winery, 150 F.3d at 1046.  Three general principles help
6 determine whether marks are similar.  First, "[s]imilarity is best adjudged by
7 appearance, sound, and meaning."  Entrepreneur Media, Inc. v. Smith, 279
8 F.3d 1135, 1144 (9th Cir. 2000).  Second, the "marks must be considered in
9 their entirety and as they appear in the marketplace."  GoTo.com, Inc. v. Walt
10 Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000).  Third, "similarities are
11 weighed more heavily than differences." Id.  The names of Plaintiff's and
12 Defendants' restaurants, "Lucha Libre Gourmet Taco Shop" and "Santos Lucha
13 Libre Taco Shop," respectively, are similar because they share four out of five
14 words, which are distinct in sound and meaning because of their combination
15 of English and Spanish words and reference to Mexican wrestling.  Additionally,
16 the appearance of both restaurants' interiors is similar, as shown in Plaintiff's
17 picture evidence of the common hot pink, gold and blue color scheme, displays
18 of vintage decorations and Mexican wrestling masks and photos.  Compl. ¶ 20
19 and Exh. A with ¶ 29 and Exh. B.  Surely, these commonalities would be
20 considered similar in the marketplace.  Finally, Plaintiff cites sufficient evidence
21 of public confusion by pointing to three specific instances in which the
22 Restaurant's patrons mistook Defendants' establishment for Plaintiff's affiliate.
23 Compl. ¶ 31.

24       As to Plaintiff's claims for common law unfair competition and trademark
25 and trade dress infringement, Plaintiff meets the test under California state law
26 by stating facts showing that Plaintiff used the marks in the Restaurant before
27 Defendants, Compl. ¶¶ 22, 26, and that Defendants' use of those marks is
28 likely to, and if fact already has, caused the public to confuse it with Plaintiff's

14cv1518 BTM (BLM)

marks.  Compl. ¶ 20; <u>see</u> <u>American Petrofina v. Petrofina of California, Inc.</u>, 596 F.2d 896, 897 (9th Cir. 1979); <u>Bosley Medical Institute v. Kremer</u>, 2007 WL 935708 (S.D. Cal. 2007).  Additionally, Plaintiff has stated a prima facie case on the merits of its unfair competition claim pursuant to Cal. Bus. & Prof. Code § 17200 by having shown violations of federal and state trademark infringement laws.  <u>See</u> <u>Kasky v. Nike</u>, 27 Cal. 4th 939, 949 (2002) (permitting violation of state and federal unfair competition laws to be treated as stating a claim under §17200); <u>see also</u> <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988); <u>New West Corp. v. NYM Co. Of California, Inc.</u>, 595 F.2d 1194, 1201 (9th Cir. 1979).

Plaintiff has therefore established a case on the merits for all six of its claims.  Lastly, the attorney's fees and costs requested in the amount of $14,465.00 are reasonable and awarded.

## VI.  CONCLUSION

For the reasons discussed above, Plaintiff's motion for default judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  December 5, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court